[Cite as *State v. Brown*, 2025-Ohio-2810.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-T-0001 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| WILLIAM BROWN, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 00711 |

## OPINION AND JUDGMENT ENTRY

Decided: August 11, 2025
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Christopher P. Lacich*, Roth Blair Roberts Strasfield & Lodge, 100 East Federal Street, Suite 600, Youngstown, OH 44503 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, William Brown, appeals his convictions for Felonious Assault, Having Weapons While Under Disability, and a firearm specification in the Trumbull County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On September 18, 2024, Brown was indicted by direct presentment to the Trumbull County Grand Jury for Felonious Assault, a felony of the second degree in violation of R.C. 2903.11(A)(2) with a firearm specification under R.C. 2941.145; and

Having Weapons While Under Disability, a felony of the third degree, in violation of R.C. 2923.13(A)(3).

{¶3} A jury trial was held on December 2-3, 2024. The following pertinent testimony and evidence were presented:

{¶4} Kashe Smith witnessed a group of people fighting at her apartment complex on June 15, 2023. She attempted to break up the fight by moving a woman involved. Multiple people began hitting Smith, who responded by making comments about fighting one of the girls who attacked her. According to Smith, Brown then approached her with a gun and said: "You're gonna do what? You ain't doing nothing." He put the gun to her left eye, told her he would shoot her, and hit her in the back of the head with the gun. She stated that she was familiar with firearms and described it as "metal," "hard," "heavy," and "a real handgun." A surveillance video of the incident was played, which showed the fight, Smith's involvement, and Brown pulling a dark object appearing to be a handgun from his pocket and holding it toward Smith's face, then hitting her in the back of the head.

{¶5} Detective Nicole Smith of the Warren Police Department spoke with Kashe Smith, who identified Brown as the perpetrator. Kashe told Detective Smith that Brown had put the gun in her eye and hit her across the back of the head, although she did not report that he threatened to kill her. Detective Smith indicated that it is often the case that, in this type of incident, police do not recover the firearm. Patrolman William Fowler who responded to the incident also reported that they did not recover a firearm from the scene.

{¶6} The jury found Brown guilty of the counts as charged in the indictment. The court sentenced Brown to a total prison term of eight to nine years.

{¶7} Brown timely appeals and raises the following assignment of error:

{¶8} "The trial court committed reversible error and an abuse of discretion when it failed to grant the Appellant's Motion to Dismiss [Rule 29] for his convictions were based on legally insufficient evidence and were against the manifest weight of the evidence."

**Weight and Sufficiency of the Evidence**

{¶9} Criminal Rule 29(A) provides that "[t]he court . . . shall order the entry of a judgment of acquittal . . . if the evidence is insufficient to sustain a conviction." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The question of whether sufficient evidence supports a conviction 'is a test of adequacy,' which we review de novo." (Citation omitted.) *State v. Hall*, 2025-Ohio-1708, ¶ 11 (11th Dist.).

{¶10} In contrast, "weight of the evidence addresses the evidence's effect of inducing belief" and the reviewing court asks "whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "[A] finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency." (Citation omitted.) *State v. Barnes*, 2023-Ohio-353, ¶ 43 (11th Dist.).

Case No. 2025-T-0001

{¶11}   Brown argues that there was insufficient evidence that a firearm was used, discharged, or operable as is required to support his convictions.

{¶12}   To convict Brown of Felonious Assault, the State was required to prove that he did knowingly "[c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."  R.C. 2903.11(A)(2).  For Having Weapons While Under Disability, the State was required to prove that he did "knowingly acquire, have, carry, or use any firearm or dangerous ordnance," although prohibited from doing so due to a felony drug conviction.  R.C. 2923.13(A)(3).  Finally, the firearm specification requires proof that he "had a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm. . . or used it to facilitate the offense."  R.C. 2941.145(A).

{¶13}   In relation to the existence of the firearm, Kashe Smith gave detailed testimony that Brown placed a firearm at her eye and then hit her on the head with it.  She explained that she was familiar with guns, saw the gun, and described it as heavy and made of metal.  She did not express any doubt that the item used by Brown while assaulting her was a firearm.

**Operability of the Firearm**

{¶14}   Brown argues that to sustain the convictions, the State was required to demonstrate that, in addition to using a firearm, such firearm was operable.  R.C. 2923.11(B)(1) defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."  A firearm must be operable to sustain convictions for Having

Case No. 2025-T-0001

Weapons While Under Disability and a firearm specification. *State v. Kovacic*, 2003-Ohio-5219, ¶ 23 (11th Dist.) ("operability is an essential element of" a firearm specification); *State v. Johns*, 2015-Ohio-2455, ¶ 22 (11th Dist.) (operability considered for the purposes of having weapons under disability conviction).

{¶15} As an initial matter, the fact that the firearm used in the offense was not recovered or introduced as evidence does not mandate a determination that its operability could not be proven. "[T]he recovery of a firearm used in a criminal offense is not required to prove that a particular firearm was operable at the time of the crime." *Johns* at ¶ 31; *State v. Tyler*, 2013-Ohio-3393, ¶ 40 (11th Dist.) ("it is not necessary to admit the firearm . . . into evidence in order to establish a firearm specification") (citation omitted). Instead, "[i]n determining whether an individual was in possession of a firearm and whether the firearm was operable . . . at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime." *Thompkins*, 78 Ohio St.3d at 385; R.C. 2923.11(B) (in determining whether a firearm is capable of being fired, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."). The Ohio Supreme Court has held that where the defendant brandishes a firearm and threatens to discharge it, "'the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable.'" *Johns* at ¶ 31, quoting *Thompkins* at 384.

{¶16} In the present matter, there was circumstantial evidence of operability presented through Kashe Smith's testimony. She testified that Brown held the gun to her eye, implying a threat of shooting, and then further verbally stated that he would kill her. This court has found sufficient evidence of operability in similar circumstances where a

Case No. 2025-T-0001

gun was not fired. For example, in *Tyler*, this court found an "implicit threat" where the victim observed and described the gun, it was pointed toward his face, and he was afraid he would be shot. It concluded that "[p]ointing the gun says all one needs to know regarding the implicit threat component" and the facts satisfied the requirement to demonstrate operability set forth in *Thompkins*. *Tyler* at ¶ 41-42. *Also State v. Hunter*, 2018-Ohio-5325, ¶ 21-24 (11th Dist.) (brandishing a firearm and pointing it at victims while stealing property was sufficient evidence of operability); *State v. Hansard*, 2018-Ohio-5181, ¶ 37 (11th Dist.) (evidence supported a finding of operability where the defendant pointed a gun at the victim's forehead, told him not to move, and stole an item).

{¶17} Brown's citation to *State v. Howse*, 2024-Ohio-503 (9th Dist.), is unavailing. In *Howse*, the court found the discharge of a firearm demonstrated its operability. *Id.* at ¶ 17. The fact that this was sufficient to support a conviction for weapons disability and firearm specification convictions does not preclude other, differing facts from also supporting such convictions.

{¶18} As to Felonious Assault, the State demonstrated Brown used a "deadly weapon," defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). In addition to being an operable firearm, the weapon was also used to hit Smith in the head. An item can be a deadly weapon if capable of being used as a bludgeon, particularly in an area such as the head. *State v. Valentin*, 2009-Ohio-6038, ¶ 37-41 (11th Dist.). There was sufficient evidence that the firearm was a deadly weapon.

{¶19} In relation to his manifest weight claims, Brown reiterates the argument that

Case No. 2025-T-0001

there was a lack of evidence to demonstrate a firearm was discharged or operable. As noted above, the testimony of the victim established operability. There is nothing in the record to contradict her testimony that the object Brown held to her face and hit her with was a firearm. While Detective Smith testified that Kashe had not mentioned the threat to kill her, the jury was in the best position to determine whether Kashe's testimony was credible. Further, even if the verbal threat was not made, as noted above, pointing the gun in Smith's eye implied a threat for the purpose of operability. *Tyler* at ¶ 41-42. We disagree with Brown's statement that the State's case was based on Kashe Smith's "interpretation of the video" of the incident. Her testimony established the events she experienced and the surveillance video showing Brown holding an object consistent with a handgun only served to buttress Smith's testimony. Smith's testimony, largely uncontradicted, supported by the video, provided evidence that supported the convictions by the weight and sufficiency of the evidence.

{¶20} The sole assignment of error is without merit.

{¶21} For the foregoing reasons, Brown's convictions for Felonious Assault, Having Weapons While Under Disability, and a firearm specification in the Trumbull County Court of Common Pleas are affirmed. Costs to be taxed against appellant.

ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignment of error is without merit.  The order of this court is that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH


_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs


_____
JUDGE MATT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.